**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HANCOCK BANK,

      Plaintiff,

v.                                                    Case No: 3:13-cv-26-J-32JBT

NICHOLS CREEK DEVELOPMENT,
L.L.C., <u>et al</u>.,

      Defendants.

_____

<u>**O R D E R**</u>

Plaintiff Hancock Bank (now known as Whitney Bank) seeks to recover on a defaulted loan from both the borrower, Defendant Nichols Creek Development, LLC, and the guarantors and foreclose on the land securing the debt. (Doc. 55). Hancock filed two motions for summary judgment (Docs. 134, 135), and the parties fully briefed the issues. (Docs. 125, 126, 127, 128, 129, 130, 131, 132, 133, 136, 137, 138, 139, 140, 141, 142, 144, 145, 146, 148, 157, 159, 160, 180). The Court heard oral argument on the pending motions on July 31, 2014. (Doc. 169). Defendants then filed a motion for leave to file supplemental authority (Doc. 173), and Hancock responded (Doc. 178).

While the Court was preparing to rule on the pending motions, Nichols Creek filed for bankruptcy. (Docs. 183, 185). Accordingly, the Court stayed the case in its entirety pending resolution of the bankruptcy case. (Doc. 190). Now that the bankruptcy case has been dismissed (Doc. 197), the Court can lift the stay and proceed to rule on the motions for summary judgment.

## I.     FACTS

On December 7, 2006, Peoples First Community Bank lent Nichols Creek Development, LLC $6 million, to be repaid with interest by December 7, 2008. (Doc. 133-4 at 1). A mortgage in the names of Nichols Creek and Hill Street, L.L.C. was executed to secure the loan that same day. (Doc. 133-5 at 1). The mortgage covers land in northeast Jacksonville along the St. Johns River by Blount Island ("the Nichols Creek property").[1] (Doc. 140-1 at 10). The mortgage also covers land owned by Hill Street ("the Hill Street property"), which was located on the St. Johns River in downtown Jacksonville near the Mathews Bridge and was leased to tenants for industrial uses.[2] (Doc. 141-1 at 1). Novorra Redmond, Ricky Mitchell, J.D. Mitchell,[3] and Hill Street, L.L.C. ("Guarantors") executed guaranties for Nichols Creek's liability under the loan. (Docs. 133-7, 133-8, 133-9, 133-10).

On December 31, 2008, Nichols Creek promised to pay Peoples First $5,999,995.93 plus interest by December 31, 2009 under a renewal real estate promissory note ("the Nichols Creek loan"). (Doc. 133-11). Guarantors each executed written guaranties to secure payment of this renewal note. (Docs. 133-12, 133-13, 133-14, 133-15).

---

[1] According to an October 16, 2013 appraisal, the Nichols Creek property is worth $21.77 million. (Doc. 140-1 at 11-12). It is described in the mortgage as "Parcel 1." (Doc. 133-5 at 28-29).

[2] This property is described in the mortgage as Parcel 2, Parcels A through F, plus certain unnamed parcels. (Doc. 133-5 at 20-27, 29-30).

[3] On October 1, 2015, Nichols Creek filed a Suggestion of Death of J.D. Mitchell, notifying the Court and all interested parties that J.D. Mitchell died on December 8, 2014. (Doc. 198).

On September 30, 2009, Nichols Creek and Peoples First agreed to a modification of the note agreement, which lowered the contract rate of interest to 6.5% and extended the maturity date for the loan to September 1, 2010. (Doc. 133-16). Hill Street, Nichols Creek, and Peoples First also agreed to a cross default and cross collateralization agreement. (Doc. 133-17). Hill Street had previously taken out a loan from Peoples First for $5,421,346 ("the Hill Street loan"), which was secured by three mortgages on different properties that comprised the Hill Street property.[4] (Id. at 1). In the cross default and cross collateralization agreement, Hill Street and Nichols Creek agreed that each of their mortgages with Peoples First would be cross-collateralized and that a default under any of the notes or mortgages would constitute a default under any or all of the notes or mortgages. (Id. at 2).

On December 18, 2009, Hancock purchased the Nichols Creek loan. (Doc. 133-1 at 3-4). The FDIC, which was empowered to liquidate Peoples First's assets, assigned the 2006 note and mortgage, 2008 renewal note, and each of the four 2008 guaranties to Hancock. (Doc. 133-2 at 1). Hancock subsequently agreed to extend the maturity date of the renewal note to December 1, 2010. (Doc. 133-18).

When Nichols Creek and Hill Street did not pay off their loans at maturity, David McCranie, a vice president of special assets for Hancock, met with Redmond and Ricky Mitchell about the loans. (Doc. 137 at 4-5). The three men met at least ten times between January 2011 and December 2012. (Id. at 5). At those meetings,

---

[4] The Hill Street loan was the subject of another case, 3:13-cv-71-J-25MCR, discussed infra Part III.B.

McCranie assured Redmond and Mitchell that Hancock would not foreclose on the collateral, and that they intended to work to resolve the loan without resorting to litigation. (Id.). Specifically, on January 27, 2011, McCranie told Redmond and Mitchell that Hancock did not intend to foreclose on the collateral and did not, in fact, want the collateral. (Id. at 6).

Although the loan documents permitted Hancock to collect interest at the default rate of 17.5%, Hancock sent Nichols Creek a letter on February 8, 2011 requesting only the note rate of 6.5%. (Id.). Nichols Creek began to make interest payments, albeit at the rate of 3.25%. (Doc. 126-2 at 68). McCranie accepted these payments, but noted that the bank had not committed to any changes from the original terms of the loan documents. (Id. at 72). In fact, McCranie did not have the authority to waive Nichols Creek's default interest. (Doc. 131-1 at 18).

Nichols Creek has defaulted on the loan. (133-1 at 8). Nichols Creek and Hill Street have defaulted under the terms of the mortgage. (Id.). The Guarantors are also in default for failing to pay all amounts due under the renewal note and the guaranties. (Id.). Hancock seeks to recover from Nichols Creek and from the Guarantors for these defaults. (Doc. 55). Hancock also seeks to foreclose against Nichols Creek, Hill Street, and other lienholders, Stokes Holding, LLLP, Hawkins Avenue Corporation, R2S, LLC, Ace Electrical Services of North Florida, Inc., and Whitleys Heating & Air LLC. (Id.). Default has been entered against Ace Electrical (Doc. 117) and Whitleys Heating & Air (Doc. 124).

## II.    STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005). However, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial."  Schechter v. Ga. State Univ., 341 F. App'x 560, 562, 2009 WL 2448254, at *1 (11th Cir. Aug. 12, 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III.    ANALYSIS

### A.    Hancock's Complaint and Motions

Count I of the Second Amended Complaint alleges breach of a promissory note against Nichols Creek, Count II seeks to foreclose on the mortgage against Nichols

Creek, Hill Street, Hawkins, Stokes, R2S, Ace Electrical, and Whitleys Heating & Air, and Counts III-VI seek to recover on guaranties against Redmond, Ricky Mitchell, J.D. Mitchell, and Hill Street respectively.[5] (Doc. 55). Hancock filed two summary judgment motions. First, it moved for summary judgment against Nichols Creek, Hawkins, the Guarantors, Ace, and Whitleys Heating & Air on all counts of the Second Amended Complaint. (Doc. 134). Hancock states that the total amount due and owing to Hancock from Defendants as of March 12, 2014 is $9,661,491.14.[6] (Doc. 180). Second, it moved for summary judgment against R2S and Stokes on Count II of the Second Amended Complaint. (Doc. 135).

Stokes has filed a counterclaim against Hancock and cross-claim against Nichols Creek, Hawkins, R2S, Hill Street, Ace Electrical, and Whitleys Heating & Air. (Doc. 60). Stokes seeks judgment against Nichols Creek for the amount it owes to Stokes under a promissory note secured by a mortgage on part of the Nichols Creek property, a declaration that Stokes's lien is superior to all other liens, including Hancock's, and a requirement that Hancock foreclose on the Hill Street property before the Nichols Creek property. (Id.). The Clerk entered default against Ace Electrical and Whitleys Heating & Air on the cross-claim. (Doc. 120, 121). Hancock

---

[5] Hancock also brought Count VII for enforcement of an assignment of rents. (Doc. 55 at 17). However, Hancock notes that there are no rents for the property, and accordingly did not address Count VII in its motion for summary judgment. (Doc. 134 at 3).

[6] Hancock initially calculated its damages at $7,990,075.44. (Doc. 134 at 7; Doc. 133-1, ¶ 36). On September 24, 2014, it filed a notice and affidavit (Docs. 180, 180-1) informing the Court that the original total was the result of a scrivener's error and providing the correct, updated amount.

has moved for summary judgment on Counts I and III of Stokes's counterclaim. (Doc. 135).

**B.     The Hill Street Case**

Before delving into Hancock's motions, the Court pauses to discuss the history of a remarkably intertwined case that provides a framework for the analysis. In that case, Hancock sued to recover under the Hill Street loan and foreclose on the Hill Street property. <u>Hancock Bank v. Hill Street, L.L.C., et al.</u>, 3:13-cv-71-J-25MCR (M.D. Fla. July 8, 2014). Many of the Defendants in this case were Defendants in that action, including Hill Street, Redmond, Ricky Mitchell, Ace Electrical, and Whitleys Heating & Air. In both the Hill Street case and here, Hancock filed a motion for summary judgment against the borrower and the guarantors. (<u>Compare</u> Doc. 134 <u>with</u> 3:13-cv-71 Doc. 107). The responses to those motions are nearly identical, as they raise the same affirmative defenses based on much of the same conduct. (<u>Compare</u> Doc. 142 <u>with</u> 3:13-cv-71 Doc. 115). Judge Adams ultimately granted Hancock's motions for summary judgment, finding that "[t]he affirmative defenses asserted by Defendants [were] not well taken." (3:13-cv-71 Doc. 153 at 31). The Hill Street property was therefore sold at foreclosure, where it was purchased by Hancock. (3:13-cv-71 Doc. 190).

The parties submitted statements regarding the effect of the Hill Street case on this case. (Docs. 165, 166, 167). The case is important for two reasons. First, while Judge Adams's opinion does not have preclusive effect, it is persuasive authority in this quite similar case. Second, because the Hill Street property has been sold, the

foreclosure action is moot insofar as it referred to that property. (Doc. 189). Moreover, Defendants' arguments that Hancock must first foreclose on the Hill Street property are moot.

While this case and the Hill Street case are similar, there are three important differences. First, Defendants contend that McCranie's deposition, admissible evidence in the Hill Street case, is inadmissible here. See infra Part III.C. Second, Defendants in this case argue that Hancock could have mitigated its damages by not interfering with Nichols Creek's agreement to sell a portion of the Nichols Creek property. See infra Part III.D.4. Third, Stokes and R2S, who were not parties to the Hill Street case, raise issues not present in the Hill Street case. See infra Part III.E, Part III.F.

## C.   The Admissibility of McCranie's Deposition

Prior to taking McCranie's deposition in the Hill Street case, Nichols Creek's attorneys sought a stipulation that the deposition could be used as evidence in this case. (Doc. 144 at 2). Hancock's attorney rejected this stipulation because he believed it to be a backdoor extension of the discovery deadline, which was to end before McCranie's deposition. (Doc. 144-1 at 2). However, Nichols Creek moved to extend the discovery deadline and, on November 20, 2013, Magistrate Judge Toomey granted that relief, specifically stating that, "Defendant may depose non-party witness David McCranie." (Doc. 84 at 3). On that same day and on the next day, McCranie was deposed in the Hill Street case. (Doc. 144 at 1). Despite Judge Toomey's Order, McCranie was never deposed in this case.

Because the two cases are so intertwined, much of McCranie's deposition testimony related to both cases. (<u>See</u> Doc. 108 at 2). Nevertheless, when counsel for two of the guarantors in the Hill Street case called in the middle of the deposition and asked if the deposition was for the Hill Street case or the Nichols Creek case, Hancock's counsel advised that it was for the Hill Street case. (Doc. 132-1 at 14). Later, Nichols Creek's counsel objected to questions asked by Hancock's counsel on the grounds that they included "the Nichols case, which is not being deposed on." (<u>Id.</u> at 29).

Nichols Creek has previously cited to McCranie's deposition in a motion to compel, noting that it discussed the existence of a number of documents relevant to this case. (Doc. 90 at 3). Now, however, it objects to McCranie's deposition testimony, alleging that neither it nor Stokes questioned McCranie about topics relevant only to the Nichols Creek case.[7] (Doc. 144 at 3). Counsel for Nichols Creek did, however, ask questions specific to Nichols Creek during the deposition. (Doc. 131-1 at 68).

Deposition testimony may be offered against a party who had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination, or a party whose predecessor in interest had such an opportunity and motive. Fed. R. Evid. 804(b)(1). Defendants in the Hill Street case had an opportunity and motive to find out what McCranie told Redmond and Ricky Mitchell at meetings that covered both the Nichols Creek and Hill Street loans, including the key issues in this case of whether McCranie promised not to foreclose or to waive default interest. This motive

---

[7] Nichols Creek improperly docketed the motion as an objection, rather than as a motion with a M.D. Fla. Local Rule 3.01(g) certification.

and opportunity is evidenced by the fact that Nichols Creek and Guarantors' response to Hancock's motion for summary judgment uses almost the exact same references to testimony from McCranie as their response in the Hill Street case, with the main difference being that they cited to his deposition in the Hill Street case, and cite to a declaration in this case. (<u>Compare</u> Doc. 142 at 2-6 <u>with</u> 3:13-cv-71, Doc. 115 at 2-6). As Defendants' predecessors in interest had an opportunity and motive to develop McCranie's testimony, the deposition testimony is admissible.[8]

### D.   Nichols Creek, Hawkins, and Guarantors' Affirmative Defenses

Nichols Creek, Hawkins, and Guarantors do not contest the validity of the note, mortgage, or guaranties, but assert that equitable defenses of waiver, estoppel, laches, and avoidable consequences prevent relief for Hancock Bank.[9]  (Doc. 142).

---

[8] To the extent Stokes argues that McCranie's deposition is inadmissible because it was taken only in the Hill Street case (Doc. 146 at 4), Hancock did not use McCranie's testimony to support its arguments for summary judgment against R2S and Stokes (Docs. 135, 160).

[9] Defendants asserted two other affirmative defenses in their Amended Answer: Hancock has not sufficiently demonstrated that it is the rightful holder of the documents evidencing Defendants' indebtedness (Fifth Affirmative Defense), and Hawkins did not agree to subordinate the loan to the cross-default and cross-collateralization agreement which makes the Cross-Default Agreement unenforceable as to Hawkins (Sixth Affirmative Defense). (Doc. 103 at 23). In their response to Hancock's motion for summary judgment, Defendants do not address these two defenses, instead relying solely on their other affirmative defenses of waiver, estoppel, laches, and the doctrine of unavoidable consequences. (Doc. 142). Therefore, given that Defendants have abandoned these two defenses, the Court finds that Hancock is entitled to summary judgment as to the Fifth and Sixth Affirmative Defenses as a matter of law.

### 1.   <u>Waiver</u>

Defendants assert that Hancock waived both its right to foreclose and to collect default interest. (Doc. 142 at 10-12). "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." <u>Goodwin v. Blu Murray Ins. Agency, Inc.</u>, 939 So. 2d 1098, 1104 (Fla. Dist. Ct. App. 2006) (citation omitted). At issue is whether Hancock intended to relinquish its rights.

Defendants argue that Hancock's intent to waive their right to foreclosure is demonstrated by McCranie's repeated assurances that Hancock would not foreclose on the property. (Doc. 142 at 11). According to Ricky Mitchell, McCranie said Hancock Bank "will never foreclose" on Nichols Creek. (Doc. 126-1 at 99). However, Mitchell also states that as early as April 28, 2011, the two men had discussed a 12-24 month forbearance agreement, with the idea that Hancock would foreclose after that period if nothing were to change. (Doc. 126-2 at 60). Thus, even Mitchell's own testimony establishes that foreclosure was an option.

McCranie testified at his deposition that he told Mitchell that Hancock did not <u>intend</u> to foreclose, but that he never told Mitchell either that Hancock would or would not foreclose on Nichols Creek.[10] (Doc. 132-3 at 2). Somewhat contradictorily, Nichols Creek filed a declaration from McCranie stating that he "assured Mr. Redmond and Mr. Mitchell that Hancock would not foreclose on the collateral that secured the

---

[10] The deposition was taken in November 2013.

[Nichols Creek] Loan and that Hancock intended to continue to work with them to resolve the Loan without resorting to litigation."[11] (Doc. 137 at 5). The remainder of the declaration, however, is consistent with the deposition in stating that Hancock did not <u>intend</u> to foreclose, so long as "there were conversations as to the disposition of the loan." (<u>Id.</u> at 6).

In a letter dated July 16, 2012, McCranie told Mitchell that, if he could not get a contract to sell the Nichols Creek property before August 15, 2012, and the parties could not agree to a forbearance agreement, Hancock would foreclose. (Doc. 138-4 at 3). Mitchell's notes from his July 26, 2012 meeting with McCranie confirm that he was aware that foreclosure was a possibility. (Doc. 138-1 at 14).

In other words, the testimony of Mitchell and McCranie, as well as the paper evidence of McCranie's letter, all indicate that foreclosure was an option. Moreover, the renewal note provides that Hancock could not waive its remedies unless it was "set forth in a written document executed by [Hancock]." (Doc. 133-11 at 3). Hancock did not execute such a waiver. The mortgage also states that, "No failure by the mortgagee to insist upon the strict performance of any term hereof or to exercise any right[,] power[,] or remedy consequent upon a breach thereof shall constitute a waiver of any such term or of any such breach." (Doc. 133-5 at 14). As such, any delay by Hancock in executing foreclosure did not act to waive its right to foreclose. As the undisputed record evidence demonstrates that foreclosure was always a contemplated possibility,

---

[11] The declaration was executed in March 2014.

there is no issue of material fact as to whether Hancock intended to waive its right to foreclose.

Defendants' arguments about the default interest rate fail for the same reasons. The only evidence that Hancock intended to waive its right to default interest was that it charged and accepted lesser interest payments during the period of default. (Doc. 126-2 at 31, 34). McCranie never told Nichols Creek that Hancock was waiving default interest. (Doc. 132-3 at 3). When he did ask for payments at the note rate of 6.5% instead of the default rate, he noted that Nichols Creek was only paying 3.25%, and that the bank had not committed to any changes from the original terms of the loan documents. (Doc. 126-2 at 72). In fact, McCranie did not even have the authority to waive Nichols Creek's default interest. (Doc. 131-1 at 18). Moreover, as noted above, the mortgage provides that any failure by Hancock to insist on the strict performance of a term, such as requiring Defendants to pay the default interest rate, would not constitute waiver of the term. (Doc. 133-5 at 14). As such, there is no evidence Hancock intended to waive Nichols Creek's default interest, and Defendants' waiver defense is insufficient as a matter of law.

## 2. **Laches**

A defendant may assert the defense of laches where it engaged in conduct giving rise to the situation of which the complaint is made, the plaintiff had knowledge of the defendant's conduct but failed to assert his rights by suit, the defendant did not know that the plaintiff would assert his rights, and injury or prejudice to the defendant would result if relief is given to the plaintiff. See Gaines v. Gaines, 870 So. 2d 187, 188

(Fla. Dist. Ct. App. 2004). Laches is appropriately applied prior to the running of the statute of limitations only where strong equities are apparent. See Goodwin, 939 So. 2d at 1104. "This occurs when an unreasonable delay results in prejudice to the rights of the party against whom enforcement of a debt or other obligation is sought." Briggs v. Estate of Geelhoed By and Through Johnson, 543 So. 2d 332, 333 (Fla. Dist. Ct. App. 1989). In this case, the statute of limitations on filing suit had not run and strong equities are not apparent.

The only prejudice Nichols Creek asserts from Hancock's failure to bring suit earlier is Nichols Creek's continued attempts to sell the Nichols Creek property to Jacksonville Bulk Terminal after it defaulted. (Doc. 142 at 17-18). This fails to establish prejudice. If anything, the delay in foreclosing was a benefit to Nichols Creek, because it gave it more time to attempt to sell the property and get out from under the mortgage. See United States v. Margolis, 758 F. Supp. 1482, 1484 (S.D. Fla. 1991) (finding that a foreclosure action was not barred by laches where the delay enabled the mortgagor to remain in her home, constituting a benefit rather than prejudice). As such, the defense of laches is insufficient as a matter of law.

### 3.   **Equitable Estoppel**

Equitable estoppel applies where, contrary to a later position, a plaintiff made a representation about a material fact, the defendant relied on that representation, and the defendant changed its position to its detriment based on that reliance. See Goodwin, 939 So. 2d at 1103. This doctrine must be applied with "great caution," and

the party raising estoppel must prove its elements by clear and convincing evidence. Id.

Defendants argue that Hancock is estopped from foreclosing on the Nichols Creek property and suing them on the loan based on McCranie's assurances that Hancock would not foreclose on the property or sue them, and that Hancock would continue to work with them on the loan. (Doc. 142 at 12). They further claim that they detrimentally relied upon Hancock's assertion that the bank would never foreclose on the Nichols Creek property by continuing to make interest payments and pay property taxes on the property. (Id. at 13). Hancock refutes Defendants' estoppel defense by arguing that, assuming any assurances were made: (1) Defendants did not justifiably rely on the alleged oral representation that Hancock would not foreclose or file suit; (2) the alleged oral representation is contradicted by the loan documents; (3) the loan documents specify that any modification to the terms are valid only if in writing, and Defendants offered no additional consideration; and (4) Defendants have not established a change in position to their detriment. (Doc. 134 at 19).

An equitable estoppel defense does not apply when the terms of a written contract contravene the alleged oral promise. Regions Bank v. Old Jupiter, LLC, No. 10-80188-CIV, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010) aff'd, 449 F. App'x 818 (11th Cir. 2011). Further, a party asserting equitable estoppel must demonstrate justifiable reliance on the claimed prior inconsistent statement or conduct. See id. This it cannot do where the alleged oral promises are "completely inconsistent and irreconcilable with the express terms of the parties' written [a]greement." Eclipse Med.

Inc. v. American Hydro–Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1349 (S.D. Fla. 1999).

Contract provisions providing that any modifications to a loan's terms are valid only if in writing are generally enforceable. See Coral Reef Drive Land Dev., LLC v. Duke Realty Ltd. P'ship, 45 So. 3d 897, 901 (Fla. Dist. Ct. App. 2010). Under Florida law, oral modifications are permitted when one party provides additional consideration for the other party's acceptance of the oral modification. See id. at 901-02. It is not sufficient consideration, however, if the debtor promises to do anything which he is legally bound to do. See Blair v. Howard, 144 Fla. 421, 424 (1940); also Fifth Third Bank v. Alaedin & Majdi Invs., Inc., No. 8:11-CIV-2206-T-17, 2013 WL 623895, at *5 (M.D. Fla. Feb. 20, 2013) (defendants' reliance on mortgagee's oral promise was not supported by additional consideration because borrower was already legally obligated to make such payments, and thus was not justified).

Here, McCranie denies that he advised Defendants that Hancock would never foreclose or file suit. (See, e.g., Doc. 132-3 at 1-2, 5). Because Hancock did not say that it would never foreclose on Nichols Creek, and Ricky Mitchell acknowledged multiple times that foreclosure was presented as an option, Defendants cannot establish equitable estoppel. In addition, the terms of the written contract contravene the alleged oral promise because they require modifications to be in writing to be valid. See Regions Bank, 2010 WL 5148467, at *5. No such writing exists here.

Further, Defendants failed to provide additional consideration for any alleged oral promise. They remained legally obligated under the loan to make interest

payments and pay real estate taxes, and, therefore, these payments cannot constitute additional consideration, as Defendants contend. Making partial payments after a note's maturity date does not satisfy the consideration requirement either. See Fifth Third Bank, 2013 WL 623895, at *5. Any payments Defendants made did not change their position to their detriment, as they were already required to make such payments. Consequently, the defense of estoppel is insufficient as a matter of law.

### 4.    Failure to Mitigate Damages

On August 18, 2012, Nichols Creek contracted to sell a portion of the Nichols Creek property to Jacksonville Bulk Terminal. (Doc. 126-1 at 89-90). The sale was to close on January 31, 2013. (Id. at 93). That closing date was subsequently extended to March 1, 2013 (Id. at 108), to June 1, 2013 (Id. at 108-09), and then to December 15, 2013 (Id. at 109). The closings continued to be extended because the purchaser, Jacksonville Bulk Terminal, did not yet have the necessary permits for the property. (Id. at 111). The contract did not close on December 15, 2013. (Doc. 142 at 7).

According to Defendants, the closing has not occurred because Jacksonville Bulk Terminal is waiting to buy the property after foreclosure for a lower price. (Id. at 18). However, Mitchell asserted on October 7, 2013 that he did not know whether Jacksonville Bulk Terminal knew about the lawsuit. (Doc. 126-1 at 107). If it did find out, Mitchell believed filing a lis pendens would ruin the deal. (Id. at 111). McCranie agreed. (Doc. 131-2 at 44). Nevertheless, the closing date continued to be extended even after the filing of the lis pendens on January 10, 2013, as if the deal would still be completed. (Doc. 126-1 at 108-09). Despite this fact, Defendants argue that Hancock

failed to mitigate its damages by filing a foreclosure action that ruined Nichols Creek's attempt to sell part of the property. (Doc. 142 at 18).

A party is barred from recovering damages that it could have reasonably avoided through ordinary and reasonable care. See Sys. Components Corp. v. Florida Dep't of Transp., 14 So. 3d 967, 982 (Fla. 2009). It is doubtful that the filing of a foreclosure action in these circumstances would be a failure to mitigate damages. Nevertheless, Defendants effectively ask the Court to speculate that Jacksonville Bulk Terminal found out about the lis pendens, that discovery ruined the sale, that the sale would have otherwise closed, and that the sale would have actually mitigated Hancock's damages. Indeed, even assuming the deal would have gone through, it would not have fully compensated Hancock, as Mitchell had proposed that the sale would only pay back half of the Nichols Creek principal. (Doc. 126-1 at 104). Defendants have presented no evidence that the sale would have closed without Hancock's filing of this suit or that the sale would have prevented Hancock's damages. Defendants have therefore failed to create an issue of material fact as to whether Hancock could have avoided its damages.

### 5.   Conclusion

As Defendants have failed to present an issue of material fact on their affirmative defenses, Hancock is entitled to summary judgment against Nichols Creek, Guarantors, Hawkins, Ace Electrical, and Whitleys Heating & Air on all counts of the Second Amended Complaint. The Court also finds that, as the prevailing party,

Hancock is entitled to attorneys' fees and costs pursuant to the loan documents. (Docs. 134 at 24, 133-1 at ¶ 40, 133-5 at 15, 133-11 at 5, 133-17).[12]

### E.   R2S

R2S has a lien on the Nichols Creek property related to a $550,000 loan to Nichols Creek.[13] (Doc. 148 at 1-2). R2S concedes that its lien is subordinate to Hancock's Nichols Creek loan, but asserts that their lien is superior to Hancock's Hill Street loan. (Id. at 4).

In response to Hancock's motion for summary judgment, R2S first argues that Hancock cannot foreclose on Nichols Creek because of Nichols Creek's affirmative defenses.[14] (Id. at 6-7). The Court already addressed and rejected these arguments in Part II.D.

Next, R2S argues that Hancock's lien from the Hill Street loan, cross-collateralized to cover the Nichols Creek property on September 30 2009, is not superior to R2S's September 30, 2009 loan on the Nichols Creek property. (Id. at 7). However, R2S concedes that the lien of its mortgage on the Nichols Creek property is subordinate to Hancock's lien with respect to the Nichols Creek loan. (Id. at 4). R2S is

---

[12] Defendants did not address Hancock's request for attorneys' fees and costs. (Doc. 142).

[13] Nichols Creek executed and delivered a mortgage and security agreement in connection with the loan on September 30, 2009. (Doc. 142 at 1-2).

[14] R2S asserted eight affirmative defenses, but in its opposition to summary judgment, it only relies on four, namely waiver, laches, equitable estoppel, and failure to mitigate damages, therefore conceding the remaining four. (Doc. 148 at 6-7). Thus, the Court finds that Hancock is entitled to summary judgment on R2S's remaining abandoned defenses.

therefore asserting that the foreclosure judgment in the Hill Street case does not permit Hancock to foreclose on R2S's lien. (<u>Id.</u> at 9).

Hancock is not seeking in this action to foreclose R2S's lien pursuant to the Hill Street loan (Doc. 160 at 8), and therefore the question of priority posited by R2S is not currently before the Court in Hancock's summary judgment motion. Instead, Hancock's summary judgment motion seeks only to foreclose R2S's lien with respect to Hancock's Nichols Creek loan. (<u>Id.</u>) Summary judgment against R2S on Count II of the Second Amended Complaint is therefore appropriate.

### F.    Stokes

On December 7, 2006, Stokes and Company lent Nichols Creek $1.5 million, secured by a mortgage on part of the Nichols Creek property. (Doc. 126-2 at 7-8). This mortgage was thereafter assigned to Stokes Holding LLLP. (Doc. 130-1 at 28-29). While Stokes admits that Hancock's mortgage was recorded first, Stokes seeks first priority as to the Nichols Creek property. (Doc. 146 at 2).

Hancock seeks summary judgment against Stokes on Count II of the Second Amended Complaint, which is the foreclosure count, as well as Counts I and III of Stokes's counterclaim. (Doc. 135 at 1).

### 1.    <u>Count II of Hancock's Complaint</u>

Stokes argues that Hancock's motion for summary judgment is susceptible to certain procedural defects. First, Stokes asserts that Hancock improperly brought its suit to obtain both <u>in</u> <u>rem</u> and <u>in</u> <u>personam</u> relief, noting that a final judgment that simultaneously allows a plaintiff to execute on the money judgment and foreclose on

the subject property is impermissible. (Doc. 146 at 4). See Royal Palm Corp. Ctr. Ass'n, Ltd. v. PNC Bank, NA, 89 So. 3d 923, 933 (Fla. Dist. Ct. App. 2012) ("the instant suit at law on the note and guaranties was properly joined with the mortgage foreclosure"). While it is true that a plaintiff may not simultaneously execute on a money judgment and foreclose on a property, it is within the Court's discretion to tailor the procedure for a foreclosure sale. See id. at 927 ("the plain language of the statute demonstrates that the procedure set forth in [Fla. Stat. §] 45.031 is not the exclusive procedure for setting a foreclosure sale and that a judge has the discretion to use a different procedure"). For instance, courts may enter judgments which allow the pursuit of the legal remedies and permit the initiation of the foreclosure sale process only after a plaintiff certifies that the money judgment had not been satisfied. See id. at 933. Alternatively, courts may order a foreclosure sale first, leaving a mortgagee to pursue a deficiency judgment if necessary. See Fla. Stat. § 702.06. This structure assures that, while a mortgagee like Hancock may be able to pursue both remedies within the same suit, it will not get a double recovery. Additionally, Hancock only seeks a remedy of foreclosure in relation to Stokes, making this point arguably irrelevant as it has no impact on Stokes's rights. Thus, Stokes's argument fails.

Second, Stokes contends that, by filing two separate motions for summary judgment, Hancock has somehow asked for two separate judgments. Accordingly, since a note merges into a final judgment, Hancock will have nothing left to sue on

after relief is granted on one of the two motions. (Doc. 146 at 6). Because Hancock is not seeking two separate judgments (Doc. 160 at 4), this argument fails.[15]

Third, Stokes believes that Hancock acted improperly in seeking to foreclose on the Hill Street property both in the Hill Street case and in this case. (Doc. 146 at 7). While this argument would fail in any event, it is moot in light of the foreclosure in the Hill Street case.

Stokes also makes three equitable arguments against summary judgment. First, Stokes asserts that Hancock cannot recover because it has unclean hands. The doctrine of unclean hands operates to prevent a party from recovering in equity where it is guilty of fraud. See Cong. Park Office Condos II, LLC v. First-Citizens Bank & Trust Co., 105 So. 3d 602, 609 (Fla. Dist. Ct. App. 2013). Unclean hands may prevent foreclosure where, for example, the default never would have occurred were it not for the wrongful actions of the party seeking foreclosure. See Quality Roof Servs., Inc. v. Intervest Nat. Bank, 21 So. 3d 883, 885 (Fla. Dist. Ct. App. 2009). Stokes cites to no case law involving unclean hands, and has presented no evidence of fraud, nor any evidence that the default would not have occurred but for Hancock's misconduct. (Doc. 146 at 11-15). To the extent Stokes tries to co-opt Defendants' affirmative defenses within this argument (Id. at 7-10), the Court has already addressed and rejected each of those arguments. As such, this defense fails.

---

[15] While acknowledging the possibility that the Court might enter two separate orders on its two motions for summary judgment, Hancock envisions "a singular final judgment at the end of this action." (Doc. 160 at 4).

Second, Stokes argues that it is inequitable for Hancock to foreclose on the Nichols Creek property ahead of Stokes because Hancock can recover enough money to repay the Nichols Creek and Hill Street loans from the Hill Street property without needing to foreclose on Stokes's collateral. (Id. at 11-15). As Hancock has already foreclosed on the Hill Street property, this argument is moot.

Finally, Stokes argues that it would be inequitable to allow Hancock to foreclose on the Nichols Creek property because it should have waited to foreclose so that Nichols Creek could sell part of the property to Jacksonville Bulk Terminal and avoid foreclosure. (Id. at 10, 12). According to Stokes, Hancock only decided to foreclose on the Nichols Creek property because it realized that Stokes had a superior interest to the Hill Street loan with respect to that property, which would prevent Hancock from using the proceeds of the Nichols Creek sale towards the Hill Street loan.[16] (Id. at 12). Stokes asserts that Hancock should not be rewarded for this allegedly inequitable conduct. (Id.). This theory suffers from a number of flaws, not least of which is identifying which principle of law prohibits foreclosure in the face of such "inequity." The theory also fails because there is no evidence that the sale of the Nichols Creek property would have gone through in the absence of the foreclosure action and no evidence that Hancock decided to foreclose to prevent Stokes from receiving some payment for its lien on Nichols Creek.

---

[16] When it looked like Jacksonville Bulk Terminal would buy part of Nichols Creek's property, McCranie did propose the use of a portion of the proceeds to pay down part of the Hill Street debt. (Doc. 138-4 at 7).

Thus, Hancock is entitled to summary judgment on Count II of the Second Amended Complaint as to Stokes.

### 2.      Stokes's Counterclaim and Cross-Claim

Count I of Stokes's counterclaim and cross-claim asks the Court to declare that Stokes's lien is senior to Hancock's mortgage and require Hancock to foreclose on the Hill Street property before foreclosing on the Nichols Creek property.[17]  (Doc. 60 at 18). Count III asks for a declaration that Stokes's lien is superior to all other liens, and an order of foreclosure. (Id. at 21-22).

Stokes argues that its counterclaim survives summary judgment because Hancock acted inequitably and a marshaling of assets is appropriate. (Doc. 146 at 15-18). These arguments overlap with Stokes's arguments in response to Hancock's summary judgment motion, and fail for the same reasons. As such, Hancock is entitled to summary judgment against Stokes on Counts I and III of Stokes's counterclaim.

Still remaining then are Stokes's cross-claims against Nichols Creek, Hawkins, Hill Street, and R2S. Despite Count I's denomination as a Cross-Claim and Counterclaim, the count deals with Hancock's right to foreclose and therefore appears to be mooted by a ruling with respect to Hancock. Count III asks for foreclosure, with

---

[17]  The actual counterclaim asks the Court to direct Hancock to foreclose first on Hill Street, then on the part of the Nichols Creek property that Stokes does not own, and then on the part that Stokes does own only if necessary. (Doc. 60 at 17). However, Stokes appears to have limited itself in subsequent pleadings to asking the Court to direct Hancock to foreclose first on Hill Street, then on Nichols Creek. (See Doc. 146 at 14).

Stokes to have first priority. (Doc. 60 at 19-22). This relief is mooted by the Court's granting of summary judgment for Hancock on the foreclosure count.

Finally, Count II of Stokes's cross-claim asks for judgment against Nichols Creek for the sum due under the Stokes Note. (Id. at 19). As neither party moved for summary judgment on that count, the case will move forward on that issue.

Accordingly, it is hereby

**ORDERED:**

1. The stay imposed on February 26, 2015 (Doc. 190) is lifted, and the Clerk should reopen the file.

2. Hancock's Motion for Final Summary Judgment against Borrower, Guarantors, and Hawkins (Doc. 134) is **GRANTED** as to Counts I-VI, and **MOOT** as to Count VII. The Clerk has already entered a default against Ace Electrical and Whitleys Heating & Air. (Docs. 117, 124).

3. Hancock's Motion for Summary Judgment against Stokes and R2S (Doc. 135) is **GRANTED**.

4. Defendants' Motion for Leave to File Supplemental Authority (Doc. 173) is **DENIED**.

5. By **January 19, 2016**, Hancock shall file a proposed final judgment consistent with this Order and including any demand for attorneys' fees and costs.

6. By **January 19, 2016**, Nichols Creek and Stokes shall file brief notices with the Court stating how they intend to proceed regarding Count II of Stokes's cross-claim.

7.     By **January 28, 2016**, any party may file objections to the proposed final judgment.

**DONE AND ORDERED** in Jacksonville, Florida the 29th day of December, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

sj.
Copies to:

Counsel of record